1
2
3
4
5
6
7          **UNITED STATES DISTRICT COURT**
8         **SOUTHERN DISTRICT OF CALIFORNIA**
9   ADVANCED AUCTIONS LLC,              CASE NO. 13CV1612 BEN (JLB)
10                        Plaintiff,    **ORDER GRANTING MOTION**
                                        **FOR JUDGMENT ON THE**
11       vs.                            **PLEADINGS**
12   EBAY INC.,                         [Docket No. 71]
13                        Defendant.
14

15       Before the Court is Defendant eBay, Inc.'s Motion for Judgment on the

16   Pleadings. (Docket No. 71.) Defendant eBay asserts that Plaintiff Advanced Auctions

17   LLC's patent, U.S. Patent No. 8,266,000 ('000 Patent), claims unpatentable subject

18   matter under 35 U.S.C. § 101 — the abstract idea of an auction lacking any additional

19   inventive concept that would make it patent eligible.  Advanced Auctions has filed an

20   Opposition and eBay has filed a Reply. (Docket Nos. 72-73.)  The Court heard oral

21   argument on December 12, 2014.

22                            **BACKGROUND**

23       The '000 Patent claims a two-mode computer-based Internet auction. During the

24   first mode, the item being sold is displayed, bids can be placed, and a user receives

25   updated information on the status of the auction by a manual request, *i.e.* manually

26   refreshing the page.  At a predetermined set time, the auction moves into a second

27   mode.  During the second mode, information about the status of the auction is updated

28   automatically without the user manually requesting the update.

Claim 1 of the '000 Patent recites:

> A method of hosting a computer-based auction over the internet, comprising:
> using a computer to produce information representing a webpage indicative of an electronic auction, where said webpage shows bid amounts and accepts bids over the internet;
> said computer producing second information as part of said information representing a webpage, said second information having a first parameter indicative of an ending time for said electronic auction;
> said computer also storing a predetermined set time before the ending time;
> prior to said set time before said ending time, said computer carrying out the auction in a first mode, in which information that represents a webpage with information about the auction is updated only based on a manual request for update received from a client over the internet and is not automatically updated;
> after said set time before said ending time, said computer changing a mode of carrying out the auction to a second mode, wherein said second mode, said computer automatically updating said information that represents the webpage to have new information and automatically sending said new information over the internet to each of a plurality of clients, in a way that causes said each of said plurality of clients to automatically display said new information without making a request for said new information.

'000 Patent , 10:1-29

The remainder of the claims vary this basic structure, including for example: starting the second mode an hour before the end of the auction; automatically refreshing only the price and highest bidder; and use of streaming video for an update.

## DISCUSSION

### I.    Judgment on the Pleadings

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is properly granted when, accepting all factual allegations in the complaint as true, there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012). The standard for a Rule 12(c) motion is "substantially identical" to Rule

1   12(b)(6). *Id.*

2   **II.      Unpatentable Subject Matter**

3        Section 101 defines the subject matter eligible for patents, but "[l]aws of nature,
4   natural phenomena, and *abstract ideas* are not patentable." *Ass'n for Molecular*
5   *Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013) (emphasis added).
6   "The concepts covered by these exceptions are 'part of the storehouse of knowledge
7   of all men . . . free to all men and reserved exclusively to none." *Bilski v. Kappos*, 561
8   U.S. 593, 602 (2010) (quoting *Funk Brothers See Co. v. Kalo Inoculant Co.*, 333 U.S.
9   127, 130 (1948)).    "[T]he underlying concern is that 'patent law not inhibit further
10  discovery by improperly tying up the future use of these building blocks of human
11  ingenuity.'" *buySAFE, Inc. v. Google, Inc.,* 765 F.3d 1350, 1352-53 (Fed. Cir. 2014)
12  (quoting *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014)).

13       Under the Supreme Court's two-step analytical framework, the Court "first
14  determine[s] whether a claim is 'directed to' a patent-ineligible abstract idea." *Content*
15  *Extraction and Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343,
16  1346 (Fed. Cir. 2014) (quoting *Alice Corp.*, 134 S. Ct. at 2355).  If it is an abstract idea,
17  the Court moves to the second step, "the search for an 'inventive concept.'" *DDR*
18  *Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1255 (Fed. Cir. 2014) (quoting
19  *Alice Corp.*, 134 S. Ct. at 2355).  The Court "must determine whether the claims
20  contain 'an element or combination of elements that is sufficient to ensure that the
21  patent in practice amounts to significantly more than a patent upon the ineligible
22  concept itself.'" *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014)
23  (quoting *Alice Corp.*, 134 S. Ct. at 2354).

24       As explained below, the Court finds the '000 Patent claims the abstract idea of
25  an auction and the generic computer implementation of that idea on the Internet
26  without the addition of any inventive concept.

27       **A.      Abstract Idea**

28       "The Supreme Court has not delimited the precise contours of the 'abstract ideas'

13cv1612

category." *Content Extraction*, 776 F.3d at 1346 (quoting *Alice Corp.*, 134 S. Ct. at 2355). Mathematical formulas and algorithms have been found to be abstract ideas ineligible for patent protection under § 101, but a concept need not be a "preexisting, fundamental truth" or reducible to a mathematical formula[1] to constitute an abstract idea. *Alice Corp.*, 134 S. Ct. at 2355-56. "[F]undamental economic practice[s] long prevalent in our system of commerce" are abstract ideas. *Id.* at 2356. In *Alice* and *Bilski*, the Supreme Court found hedging financial risk and intermediated settlement qualified as fundamental economic practices. *Id.* Recent decisions from the Federal Circuit have built on these precedents. In *buySAFE* and *Ultramercial*, the court found transaction performance guarantees and using advertising as currency were abstract ideas. *buySAFE*, 765 F.3d at 1355; *Ultramercial*, 772 F.3d at 715.

Here, eBay argues that the claims are directed to a fundamental economic practice, an auction. In opposition, Advanced Auctions seems to assert that what is claimed must completely preempt the entire abstract idea, *i.e.* squarely match the abstract idea, to be directed to that abstract idea. Similarly, Advanced Auctions also argues that the claims are directed to something distinguishable from an auction.[2] Generally, both of these arguments are more appropriately considered at the second step in the search for an inventive concept. *See Ultramercial,* 772 F.3d at 715 ("any

---

[1] In *Parker v. Flook*, the Supreme Court found a mathematical formula to adjust alarm limits for temperature and pressure in a catalytic conversion process was ineligible and the computer implementation was conventional. *Alice Corp.*, 134 S. Ct. at 2358 (discussing *Parker v. Flook*, 437 U.S. 584 (1978)). However, the claims in *Diamond v. Diehr* were patent eligible, despite relying on a mathematical formula, because additional steps — recording temperature measurements inside a rubber mold and using the measurements to repeatedly recalculate the cure time using the mathematical formula — improved a technological process, *i.e.* added an inventive concept. *Id.* (discussing *Diamond v. Diehr*, 450 U.S. 175 (1981)).

[2] Advanced Auctions also relies heavily on eBay's patent activities, but eBay's patents are not before this Court and Advanced Auctions cites no authority for this Court to use eBay's patents in the analysis of the patent actually before this Court. That eBay's patents may also be directed to an abstract idea is not at issue in this case. Additionally, the particular ways eBay has attempted to add inventive concepts in its own patents is also not an issue for this Court to resolve. *See McRO, Inc. v. Atlus U.S.A.*, No. SACV 13-1870, 2014 WL 4772196, *7 (N.D. Cal. Sept. 22, 2014) (noting the validity of a defendant's patent was not before it and reasoning that "it is hard to fault anyone for seeking patents that may turn out to be invalid where the application standards are shifting and uncertain").

13cv1612

novelty in implementation of an idea is a factor to be considered only in the second step of the *Alice* analysis"); *see Enfish, LLC v. Microsoft Corp.*, -- F. Supp. 3d --, 2014 WL 5661456, *5 (C.D. Cal. 2014) ("If the court finds the claim's purpose abstract as step one, it must then determine whether there is an inventive concept that appropriately limits the claim such that it does not preempt a significant amount of inventive activity").

To the extent Advanced Auctions is arguing that its patent must claim an auction with no variation to be directed to the abstract idea of an auction, the Court disagrees. The inquiry at this first step is "whether the claims at issue are *directed to* one of those patent-ineligible concepts," *i.e.* an abstract idea. *Alice Corp.*, 134 S. Ct. at 2355 (emphasis added). The Court must consider if the claims are "drawn to the concept of" an auction. *Id.* at 2356 ("the claims before us are drawn to the concept of intermediated settlement"). A variation on the abstract idea does not mean it is not directed to that abstract idea. *buySAFE*, 765 F.3d at 1355 (The "narrowing of [a] long-familiar commercial transaction[] does not make the idea non-abstract for section 101 purposes").

Although the Court acknowledges that at some point what a patent claims becomes different enough from the abstract idea that it is not directed or drawn to that idea, that is not the case here. Contrary to Advanced Auctions assertion, the '000 Patent does more than simply mention an auction. Putting aside the extensive discussion of the auction in the specification, the claims substantively describe an auction and make absolutely clear the '000 Patent is directed to an auction. ('000 Patent, Claim 1 ("A method of hosting a computer-based auction over the internet"); Claim 10 ("A method of interacting with a computer-based auction over the internet"); Claim 17 ("A computer product comprising a processor and memory storing executable instructions that when executed, implement a computer auction based program")). Even if the claims and specification did not explicitly identify an auction, it would still be directed or drawn to the abstract idea of an auction because that is what the claims

describe. *See Ultramercial*, 772 F.3d at 712, 715 (finding patent claimed abstract idea of "using advertising as an exchange or currency" even though the claims do not specifically identity it as such).

The two-part structure of the auction claimed also does not make the idea claimed non-abstract. The claims describe a silent auction followed by live auction. Whether the Court considers the claims directed to an auction or directed to a silent auction followed by a live auction, the result is the same. The claims are directed to an abstract idea.

Like hedging financial risk, intermediated settlement, or using advertising as currency, an auction is a "fundamental economic practice long prevalent in our system of commerce." *Alice Corp.*, 134 S. Ct. at 2356. The claims at issue are drawn or directed to the abstract idea of an auction. Because the Court finds the claims of the '000 Patent are directed to the abstract idea of an auction, the Court must consider whether the claims add an inventive concept.

### B.    Inventive Concept

In *Alice*, the Supreme Court acknowledged that on some level all inventions rest upon laws of nature, natural phenomena, or abstract ideas. 134 S. Ct. at 2354. "An invention is not rendered ineligible for patent simply because it involves an abstract concept" because the application of an abstract concept "to a new and useful end . . . remain[s] eligible for patent protection." *Id.* Or put another way, is the patent claiming the building blocks (ineligible) or "integrat[ing] the building blocks into something more" (eligible)? *Id.* At this step the Court asks "what else is in the claims" beyond the ineligible concept itself? *Id.* at 2355. The Court must "consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *Id.*

Advanced Auctions points to ways the claims of the '000 Patent differ from an auction and argues it has made online auctions more successful and efficient by

achieving a technological balance. Advanced Auctions points to the following features of the claims that add the requisite inventive concept: using two-modes; starting the second mode one hour before or at some other predetermined set time before the end of the auction; and only updating a portion of a complete webpage. Viewing the claims individually and in combination, the claims do not add an inventive concept.

"[T]he transformation of an abstract idea into patent-eligible subject matter 'requires more than simply stating the abstract idea while adding the words apply it.'" *Ultramercial*, 772 F.3d at 715 (quoting *Alice Corp.*, 134 S. Ct. at 2357). Significantly more is required. *Alice Corp.,* 134 S. Ct. at 2355. Here, the claims simply implement a two-part auction, the Internet equivalent of a silent auction followed by a live auction. "[G]eneric computer implementation" does not "transform that abstract idea into a patent-eligible invention." *Id.* at 2357. Nor does implementing the abstract idea on the Internet.  *Ultramercial*, 772 F.3d at 716 ("the use of the Internet is not sufficient to save otherwise abstract claims from ineligibility under § 101"); *see also Alice Corp.*, 134 S. Ct. at 2358 (finding "limit[ing] the use of the idea to a particular technological environment" does not make it patent eligible).

Advanced Auctions characterizes the features noted above as improvements, but as acknowledged in the '000 Patent, the claims simply attempt to carry out an online auction "more like a real live auction with certain refinements which improve it for use on the Internet." ('000 Patent 1:45-49.)  The patent itself describes implementing an existing abstract idea — an auction — refined for implementation on the Internet. Two-modes does not change this. Bidders at a silent auction can look themselves to see the status of bids during the first part of the auction, but when it shifts into a live auction, the updates come to the bidder quicker and without request, as with an auctioneer at a live auction. At some point a two-part auction must shift from the first part to the second.  The setting of a time for the shift is a minor variation to accommodate Internet implementation. Likewise, a partial update of the web page with only minimal information is also just Internet implementation of a "real live auction"

13cv1612

where a participant would receive only the current bid price and possibly the identity of the bidder.  Individually and collectively these variations do not make the abstract idea described patent eligible.

Additionally, to the extent these variations are anything more than generic Internet implementation of the abstract idea, they are "'well-understood, routine, conventional activity.'" *Id.* at 2355 (quoting *Mayo Collaborative Servs. v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289, 1297-98 (2012). This is not sufficient.  The claims "must include additional features" beyond "conventional steps, specified at a high level of generality." *Id.* at 2355, 2357.  "[I]nsignificant '[pre]-solution activity' . . . is also not sufficient to transform an otherwise patent-ineligible abstract idea into patent-eligible subject matter." *Ultramercial*, 772 F.3d at 716 (quoting *Mayo*, 132 S. Ct. at 1298).

*DDR Holdings* does not compel a different conclusion.[3]  773 F.3d 1245 (Fed. Cir. 2014).  In *DDR Holdings*, the court found the claims were patent eligible under § 101.  "[T]he claimed solution [was] necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *Id.* at 1257.  When a consumer clicks on a third-party advertisement on a host website, the consumer is directed to an automatically generated hybrid web site instead of being directed to the third-party's website. *Id.* at 1257.  The hybrid website looks like the host page, but contains the third-party's product information associated with the advertisement. *Id.* at 1257.  This allows the host to retain the consumer rather than losing them to the third-party's website. *Id.*

*DDR Holdings* is unique among Supreme Court and post-*Alice* Federal Circuit precedent in that the claims at issue changed "how interactions with the Internet are manipulated to yield a desired result — a result that overrides the routine and conventional sequence of events." *Id.* at 1258.  Additionally, the claims were not

---

[3]The Federal Circuit issued its *DDR Holdings* decision after briefing on the motion was complete.  However, both parties address the decision's application at oral argument.

directed to implementation of a "business practice known from the pre-Internet world." *Id.* at 1257.

Advanced Auctions asserts that the claims of the '000 Patent address bandwidth constraints, a problem specific to the Internet. Advanced Auctions claims its approach to an online auction minimizes server use. Requiring the user to request an update to the page during the first mode conserves server use because the demand to update is only triggered when the user refreshes as opposed the greater server demand associated with automatic updates in the second mode. That greater demand in the second mode is itself reduced when only a partial update to the page is provided. First, the Court notes that the '000 Patent does not identify server bandwidth as a problem to be solved by the Patent. However, even if it were, it is only a incidental benefit to generic implementation of the '000 Patent claims. Unlike the claims in *DDR Holdings*, the claims here do not override any routine sequence of events. The only variations on the abstract idea are refinements for Internet implementation. Additionally, unlike the claims in *DDR Holdings*, the claims here are directed to implementation of a pre-Internet world business practice.

The claims in *DDR Holdings* also attempted to solve an Internet-specific challenge, but that alone was not enough to make the claims patent-eligible. *Id.* at 1258. Relying on *Ultramercial*, the court specifically cautioned that "not all claims purporting to address Internet-centric challenges are eligible for patent." *Id.* The claims here are more in line with those at issue in *Ultramercial*. The *Ultramercial* court found claims describing an Internet user viewing media online in exchange for requesting to view an online advertisement attempted to claim the abstract idea of "using advertising as currency." *Ultramercial*, 772 F.3d at 716. That this abstract idea was Internet-specific did not save it because narrowing an "abstract idea to a particular technological environment . . . is insufficient to save a claim." *Id.* Additionally, the court found the claims only added "routine additional steps such as updating an activity log, requiring a request from the consumer to view the ad, restrictions on public access,

and use of the Internet." *Id.*  These steps  did "not transform an otherwise abstract idea into patent-eligible subject matter." *Id.*   The steps recited in the '000 Patent claims do not add an inventive concept.  Rather, the variations identified by Advanced Auctions are more akin to routine additional steps insufficient to transform the abstract idea into patent-eligible subject matter.

## CONCLUSION

For the reasons set forth above, the claims of the '000 Patent are invalid as patent-ineligible under § 101.   The motion for judgment on the pleadings is **GRANTED**.

**IT IS SO ORDERED**.

DATED:  March 26, 2015

_____
Hon. Roger T. Benitez
United States District Judge

13cv1612